IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN K. LOWE, | ) | CASE NO. 3:13 CV 2587 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by Brian K. Lowe under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying his applications

for disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 17. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 12.

[4] ECF # 13.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument and, therefore, the telephonic oral argument scheduled for December 3, 2014,[10] was canceled.[11]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Lowe, who was 45 years old at the time of the ALJ's decision,[12] has a high school education,[13] lives with his family, including two young children,[14] and has previously worked in various semiskilled jobs[15] that required medium levels of exertion or higher.[16] The current

---

[6] ECF # 14.

[7] ECF # 16 (Lowe's brief); ECF # 20 (Commissioner's brief); ECF # 22 (Lowe's reply brief).

[8] ECF # 16-2 (Lowe's charts); ECF # 21 (Commissioner's charts).

[9] ECF # 16-1 (Lowe's fact sheet).

[10] ECF # 23.

[11] ECF # 24.

[12] Transcript ("Tr.") at 51, 53.

[13] *Id.* at 51.

[14] *Id.* at 49.

[15] *Id.* at 51.

[16] *Id.* at 27-28.

claim for benefits is grounded on a 2007 incident where he slipped and fell on the ice while carrying a chemical drum at work, tearing multiple tendons.[17]

The ALJ, whose decision became the final decision of the Commissioner, found that Lowe had the following severe impairments: status-post bilateral quadriceps tendon rupture repair, chronic pain syndrome, obstructive sleep apnea, obesity, and adjustment disorder.[18]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Lowe's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can stand for no more than two hours and walk for no more than three hours in an eight-hour workday; he can sit for a full eight hours; the claimant must be allowed the option to alternate between sitting and standing positions at will throughout the workday; he requires the use of a cane for ambulation and balance; the claimant is restricted to no more than occasional stooping, balancing, or climbing of ramps or stairs, and is precluded from kneeling, crouching, crawling, and from climbing of ladders, ropes, or scaffolds; he cannot use his bilateral lower extremities for more than occasional pushing, pulling, or operation of foot controls; the claimant's work must be limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions, with few, if any, work place changes; and his work must require no more than occasional interaction with the public, co-workers, or supervisors.[19]

---

[17] *Id.* at 313.

[18] *Id.* at 44.

[19] *Id.* at 46.

-3-

The ALJ decided that this RFC precluded Lowe from performing his past relevant work as a material handler, production technician, factory worker, freight sorter, and welder.[20]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Lowe could perform.[21] The ALJ, therefore, found Lowe not under a disability.[22]

## C.    Issues on judicial review and decision

Lowe asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Lowe's challenge presents the following issues for judicial review:

- The ALJ gave the opinion of the treating psychologist, Dr. Young, little weight. As reasons, the ALJ gave the language of the checkoff form used by Dr. Young and inconsistencies contemporaneous with examinations and treatment notes. Did the ALJ give good reasons for the weight assigned to Dr. Young's opinion?

- The ALJ found that Lowe's testimony about his impairments and limitations was not credible to the extent inconsistent with the RFC finding. Is the credibility finding supported by substantial evidence?

For the reasons that follow, I will conclude that the ALJ's findings are not supported by substantial evidence and, therefore, this matter must be remanded for further administrative proceedings.

---

[20] *Id.* at 51.

[21] *Id.* at 51-52.

[22] *Id.* at 52.

-4-

## Analysis

**A.  Standards of review**

*1.  Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[23]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[24] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[25]

---

[23] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[24] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[25] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

-5-

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      *Treating physician rule and good reasons requirement***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[26]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[27]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[28] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[29]

---

[26] 20 C.F.R. § 404.1527(d)(2).

[27] *Id.*

[28] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[29] *Id.*

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[30] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[31] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[32] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[33]

In *Wilson v. Commissioner of Social Security*,[34] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[35] The court noted that the regulation expressly contains a "good reasons" requirement.[36] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[30] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[31] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[32] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[33] *Id.* at 535.

[34] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[35] *Id.* at 544.

[36] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[37]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[38] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[39] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[40] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[41]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[42] recently emphasized that the regulations require two distinct analyses, applying two separate

---

[37] *Id.* at 546.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

-8-

standards, in assessing the opinions of treating sources.[43] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[44] *Blakley v. Commissioner of Social Security*,[45] and *Hensley v. Astrue*.[46]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[47] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[48] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[49] The treating source's non-controlling status

---

[43] *Id.* at 375-76.

[44] *Rogers*, 486 F.3d at 242.

[45] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[46] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

[49] *Id.*

notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[50]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[51] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[52] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[53] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[54] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[55]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[56]

---

[50] *Rogers*, 486 F.3d at 242.

[51] *Gayheart*, 710 F.3d at 376.

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[57] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[58] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[59] or that objective medical evidence does not support that opinion.[60]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[61] The Commissioner's *post hoc* arguments on judicial review are immaterial.[62]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt

---

[57] *Rogers*, 486 F.3d 234 at 242.

[58] *Blakley*, 581 F.3d at 406-07.

[59] *Hensley*, 573 F.3d at 266-67.

[60] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[61] *Blakley*, 581 F.3d at 407.

[62] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[63]

- the rejection or discounting of the weight of a treating source without assigning weight,[64]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[65]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[66]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[67] and

---

[63] *Blakley*, 581 F.3d at 407-08.

[64] *Id.* at 408.

[65] *Id.*

[66] *Id.* at 409.

[67] *Hensley*, 573 F.3d at 266-67.

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[68]

The Sixth Circuit in *Blakley*[69] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[70] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[71]

In *Cole v. Astrue*,[72] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[73]

---

[68] *Friend*, 375 F. App'x at 551-52.

[69] *Blakley*, 581 F.3d 399.

[70] *Id.* at 409-10.

[71] *Id.* at 410.

[72] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[73] *Id.* at 940.

**B.      Application of standards**

Although, as noted, two major issues are presented here on judicial review, my determination, set forth below, that the ALJ's treatment of the opinion of Lowe's treating psychologist was not in accord with the rubrics applicable to opinions of treating sources, and so not supported by substantial evidence, will make it unnecessary to consider the question as to the ALJ's handling of Lowe's credibility.

Dr. Young, who treated Lowe in 32 individual psychotherapy sessions between November, 2010, and June, 2012,[74] provided an opinion in January, 2012, on Lowe's functional capacity by rating various work-related functions on a two-page check-box chart.[75]

As an initial matter, the ALJ did not explicitly acknowledge Dr. Young to be a treating source, and thus subject to the rules governing opinions from such sources. Instead, the ALJ proceeded to give Dr. Young's opinion "little weight" for the reasons that:

(1)      the terms on the check-box form are "idiosyncratically defined"so as that even a slight functional loss would produce a limitation preclusive of employment;

(2)      the check-box form itself is "entitled to little weight in the adjudicative process;"

(3)      Dr. Young provided "no objective support for her opinions" in the form; and

---

[74] *See*, Tr. at 613 (Dr. Young's letter of February 17, 2012 noting that as of that date she had conducted 26 sessions with Lowe) and treatment notes from subsequent sessions on February 27, 2012 (*id.* at 619); March 15, 2012 (*id.* at 620); March 29, 2012 (*id.* at 621); May 17, 2012 (*id.* at 637); May 30, 2012 (*id.* at 638); and June 14, 2012 (*id.* at 639).

[75] *Id.* at 573-74.

-14-

(4)     Her findings are inconsistent with contemporaneous examination and treatment records, in particular, with GAF scores from 2010 and 2011.[76]

On the matter of the check-box form, I have recently had several occasions to discuss the argument that this form alone is a "good reason" to discount the value ascribed to the opinion of a treating source.[77] In those cases I noted that the relevant issue is not the structure of the form itself, but whether the opinion is well-supported by clinical and diagnostic techniques and by other substantial evidence in the record.[78] And, of some importance as concerns the check-box form itself, I have also noted that "the Sixth Circuit is very clear that the medical source is not required to include all the evidence supporting his opinion within the four corners of that opinion."[79] Moreover, I have also noted that although the Commissioner now seems to frequently seek to denigrate the opinions of a claimant's sources that use the check-box form, the Commissioner apparently has no such difficulty in relying on the opinions of its reviewing sources that routinely use such a form.[80]

---

[76] *Id.* at 50-51.

[77] *Hutchison v. Comm'r of Soc. Sec.*, No. 1:13 CV 1462, 2014 WL 4852269 (N.D. Ohio Sept. 29, 2014); *Stancato v. Comm'r of Soc. Sec.*, No. 5:13 CV 1519, 2014 WL 4792560 (N.D. Ohio Sept. 24, 2014).

[78] *Hutchison*, 2014 WL 4852269, at *7 (citations omitted).

[79] *Id.* (citing *Garner*, 745 F.2d at 391).

[80] It is more than strange for the ALJ here to twice complain that the claimant's form employs terms that are "idiosyncratically defined." Tr. at 50, 51. While this form did employ its own definition of terms such as "slight, moderate or marked" to quantify levels of impairment (*see*, Tr. at 573), the form was nevertheless clear and specific on its face as to what these terms meant in the context of that form. By contrast, ALJs routinely employ terms of weight given to physician opinions – such as "little," "moderate" or "some" weight –

-15-

Here, the argument advanced by the ALJ is enhanced by the assertion that courts have "long recognized" that fill-in-the-blank or check-box forms are entitled to little weight.[81] However, district courts that have reviewed the Commissioner's argument in this regard have concluded that all three case authorities cited by the Commissioner in this case[82] do not "stand for the proposition that an ALJ may reject a physician's opinion simply because it is brief or in check-list form."[83] Rather, consistent with the reasoning I articulated in both *Hutchison v. Commissioner of Social Security* and *Stancato v. Commissioner of Social Security*, the weight to be given to an opinion, no matter its form, rests first on the nature of the source and ultimately on whether it is supported by well-established clinical and diagnostic techniques and by other substantial evidence in the record, which supporting evidence need not be contained within the four corners of the opinion itself.

---

which have *no* precise definition anywhere in the statutes or regulations, and for which individual ALJ's provide *no* definitions within the opinion, even "idiosyncratic" ones. A court charged with doing meaningful judicial review may be pardoned for preferring the clarity and precision of the claimant's form.

[81] Tr. at 50 (citing cases).

[82] *Id.*

[83] *Moore v. Astrue*, No. C 07-1218 PJH, 2008 WL 2811983, at *8 (N.D. Cal. July 21, 2008) (distinguishing *Crane v. Shalala*, 76 F.3d 251 (9th Cir. 1996)); *Lawson v. Colvin*, 21 F. Supp. 3d 606, 614 (W.D. Va. 2014) (distinguishing *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993)); *Hinders v. Barnhart*, 349 F. Supp. 2d 1218, 1227 n.3 (S.D. Iowa Dec. 21, 2004) (distinguishing *O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1983)); *see also*, *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (while a check-box form alone may be weak evidence, "the form takes on greater significance when it is supported by medical records").

Thus, to the degree that the ALJ here dismissed the functional limitation opinion of Lowe's treating psychologist without first analyzing that opinion within the rubric applicable to treating source opinions, and for the reasons that it was presented in a check-box form without supporting evidence within the form itself, those are not good reasons as a matter of law, as is more fully set forth above, and so the decision of the Commissioner in this respect is not supported by substantial evidence.

In addition, the ALJ also maintains that Dr. Young's opinion is entitled to "little" weight for the reason that it is inconsistent with contemporaneous records, including GAF scores given by Dr. Young in 2010 and 2011.[84] The ALJ has claimed that Dr. Young's opinion is contradicted by "records" contained in two exhibits – 29F and 33F.[85] However, the ALJ does not specify which record in particular[86] he relies on as proving an inconsistency in Dr. Young's opinion, and, more importantly, does not delineate that alleged inconsistency. As such, there is no way for me to meaningfully review the assertion of inconsistency based on the grounds set forth by the ALJ, and so it is not a "good reason" to discount Dr. Young's opinion.

---

[84] Tr. at 50-51.

[85] *Id.* at 50.

[86] Ex. 29F includes Dr. Young's opinion itself, plus treatment notes from two psychotherapy sessions in October, 2011, and one session in November, 2011. Ex. 33F is the treatment notes from one session in December, 2011, plus a February, 2012 "to whom it may concern" letter from Dr. Young recommending Lowe for a pain management program.

It is somewhat easier to analyze the ALJ's claim of inconsistency as regards his statement that Dr. Young's functional opinion is at odds with her assigning "the claimant global assessment of functioning (GAF) scores for 2010 and 2011 reflective of no more than moderate impairment limitations (as that term is generally defined, and not moderate as defined in the flawed [] check-off form.")[87] As stated in the opinion, the ALJ's decision in this instance to diminish the weight given to Dr. Young's opinion rests on the assertion that the 2012 opinion is at variance with GAF scores given by Dr. Young in 2010 and 2011.

The Sixth Circuit has stated, that GAF scores are subjective determinations by a single clinician of an individual's overall level of functioning.[88] Because of that subjectivity, as well as the fact that, "unlike an IQ score, a GAF score can, and does, fluctuate,"[89] the Commissioner has not endorsed the use of GAF scores in determining disability.[90] Indeed, the Sixth Circuit has stated that because a fluid GAF score may "have little or no bearing on the subject's social or occupational functioning ... we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."[91]

---

[87] *Id.* at 50-51.

[88] *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (internal quotation and citations omitted).

[89] *Hutchison*, 2014 WL 4852269, at *8.

[90] *DeBoard*, 211 F. App'x at 415 (citation omitted).

[91] *Id.* (internal quotation omitted).

-18-

That said, it remains true that a properly understood GAF score may be of "considerable help" in determining a claimant's functional capacity[92] and potentially be evidence of an inconsistency in the functional limitations opinion of a treating source.[93] But, as with much else, the key is that the GAF score be properly understood and utilized within the limits of its reliability.

Here, much as was the case in *Hutchison*, the ALJ violated the proper use/proper understanding rubric in two critical ways. First, the ALJ here attempted to take the GAF score of 52 given to Lowe in 2012 for his functioning in both 2010 and 2011 and cite them as "proof of a fatal 'inconsistency'"[94] with Dr. Young's functional opinion of 2012. This ignores the reality that GAF scores are fluid, so that any particular past score does not necessarily have any direct relevance to current levels of functioning. Thus, a citation to a past score, without more, does not state a "good reason" why a current opinion is unsupported by the treatment record or is in any way inconsistent with any past opinions of the medical source.

Moreover, it must be noted that Lowe's 2012 GAF score of 45 is deemed reflective of a "serious impairment in social, occupational or school functioning (e.g., no friends, *being unable to keep a job*)."[95] Indeed, the Sixth Circuit in *DeBoard* reiterated that a GAF score of

---

[92] *Id.* (internal citation omitted).

[93] *See*, *Hutchison*, 2014 WL 4852269, at *7.

[94] *Id.*, at *8.

[95] *Diagnostic and Statistical Manual of Mental Disorders* (4th Ed. 1994) p.34.

50 indicates a serious impairment reflecting an inability to keep a job.[96] Thus, even accepting the ALJ's flawed premise as to the weight of a single GAF score, the most recent score given to Lowe is fully reflective of Dr. Young's functional opinion.

In addition, similar to the situation I discussed in *Hutchison*, if the ALJ wanted to use the 2010 and 2011 GAF scores to show weakness in Dr. Young's 2012 opinion, he could not simply ignore the more recent – and more favorable (to Lowe) – GAF scores for 2012. As I stated in *Hutchison*, for the earlier GAF scores to be a "good reason" for discounting a treating source's opinion, the ALJ would necessarily have needed to explicitly acknowledge the later GAF score and explain why that more recent score was "proof of a 'fatal inconsistency'" with Dr. Young's functional opinion.[97]

The ALJ's failure to do so, along with the other reasons given above, compel the conclusion that the Commissioner's treatment of Dr. Young's opinion is not supported by substantial evidence and so must be reversed and the matter remanded. Further, as noted above, this adjudication makes further consideration of the question of how the ALJ treated Lowe's credibility unnecessary here.

That said, however, on remand, I urge the Commissioner to not assume that my silence on the issue of credibility, or on any other issue that may have been contested by the claimant but not adjudicated here, represents any conclusion as to the merits, or any barrier to further review and consideration in the remanded proceeding.

---

[96] *DeBoard*, 211 F. App'x at 415 (internal quotation and citation omitted).

[97] *Hutchison*, 2014 WL 4852269, at *8.

## Conclusion

For the reasons stated, substantial evidence does not support the finding of the Commissioner that Lowe had no disability. The decision of the Commissioner to deny Lowe's applications is reversed and the matter remanded for further administrative proceedings.

IT IS SO ORDERED.


Dated: March 2, 2015                               s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge